WESTERN ELECTRIC CO. v. WESTERN TEL. CONST. CO. et al.

(Circuit Court, N. D. Illinois. April 12, 1897.)

PATENTS FOR INVENTIONS—INFRINGEMENT—TELEPHONE SWITCHES.

Letters patent No. 215,837, issued May 27, 1879, to H. L. Roosevelt, for an improvement in telephone switches, whereby the receiver is suspended by a cord attached to a spring, so that taking up the receiver changes the circuit, so as to ring the call bell at the other end of the line until the person at the other end takes up his receiver, and so that dropping the first receiver again after using the telephone automatically transfers the call bell again into the circuit, are not infringed by a device patented by T. A. Watson, in which the receiver hangs from a forked hook, to which it has to be restored after using the telephone in order to transfer the call bell again into the circuit.

Suit by the Western Electric Company against the Western Telephone Construction Company and others to restrain the alleged infringement of a patent.

Barton & Brown, for complainant.

S. S. Stout, for defendants.

GROSSCUP, District Judge. The bill is to restrain infringement of letters patent No. 215,837, dated May 27, 1879, issued to Hilburn L. Roosevelt. The defendants deny infringement, and also challenge the validity of the patent.

The patent is for an improvement in telephone switches, and its purpose is compactly stated in the following, from the specifications:

"It is a matter of considerable importance in connection with several telegraphic transmitting instruments, more especially telephones, that the operation of the transmitting instrument should automatically signal to the receiving instrument at the other end of the line the fact that a message is about to be transmitted, whereby the receiving operator is enabled to prepare himself for the reception of such message. This is especially true where the transmitting operator is not, of necessity, a skilled person in the electrical

art. An instance of this can be readily given: Supposing it is desired to transmit a message to a distant point by means of a telephone or similar transmitting instrument; it is obviously desirable that the mere fact of the preparation of such transmitting instrument or telephone for sending the signal should of itself prepare the receiving operator at the other end of the line for the reception of the message. If, for instance, a telephone were hanging in a position to be raised by the transmitter, it would be very desirable that the mere fact of raising such telephone to the lips should of itself inform the receiving operator that a message was to be transmitted. My invention is designed to accomplish this result."

The letters patent then describe a mechanism wherein the telephone, which, at that time, was both receiver and transmitter, was suspended, by means of a cord, to a switch spring. The weight of the telephone, thus acting upon the spring, kept it in contact with one point in the circuit; but the lifting of the telephone, thereby taking off the weight and allowing the spring to naturally recoil, put such spring in contact with another point in the circuit. These two points were, respectively, in the call-bell circuit and the telephone circuit; a like arrangement obtaining at the other end of the line. The effect of the whole was that, when the telephone at the caller's end was lifted from its suspension, it automatically put the call bell at the other end of the line in circuit with the signal battery, thus ringing the bell; but when, in response to such ring, the telephone at the receiver's end was lifted by the operator from its suspension, the recoil of the spring at that point automatically cut out the signal battery, and restored the telephone circuit. Prior to this invention, telephones using the call bell had been in use. In some of these they were placed in the circuit by hand-operating switches, whereby the telephone line could be transferred between the call-bell branch and the telephone branch, so that, when either one was in the circuit, the other was out. But this previous arrangement, to be entirely successful, necessitated that the person at the receiving end should always be thoughtful enough, when the interview was ended, to push back, by the use of his hand, the switch throwing the call bell into the circuit; otherwise, the call bell remaining out of the circuit, no call could thereafter be sounded at that end of the line. It was found by experience that many persons merely dropped the receiver, without readjusting, by hand, the call-bell switch, and thus effectually cut out that receiver against future calls. The invention of Roosevelt, under consideration, it will be readily seen, cured this defect, for the speaker, by the act of dropping the telephone, which was also the receiver, transferred the call bell into circuit; and his successor at the phone, by the act of raising the receiver, cut out the call bell, and restored the telephone circuit.

But while the old mechanism, necessitating the cutting in and out of the circuits by hand mechanism, was thus superseded, and went into disuse, the new mechanism, embodied in the Roosevelt patent, did not come into general use. There were probably some practical objections, concerning which it is not necessary to pause. The mechanism that came into general use, including that employed by the defendants, and charged as an infringement, employed separate receivers and transmitters, the transmitters being permanently placed

in the box of the telephone. The receivers, still fashioned after the old ones, were suspended by a cord, but this cord was no longer attached to any switch spring, nor was it in touch in any way with the cutting in and out of the circuits. A forked hook was provided, projecting from the box, and communicating by appropriate mechanism with a spring lever in touch with the respective circuits, so that, when the receiver was placed in the hook, its weight put the call bell into the circuit, but, when lifted from the hook, cut it out by the recoil of the spring. The call bell thus put in the circuit is actuated alone by a hand crank. This was embodied in the letters patent to T. A. Watson, which have been declared by this court (Judge Showalter presiding) to have been anticipated, in conception. by the patent under consideration.

I feel myself compelled, in view of the then state of the art, and of the specific difficulty that the mechanism of Roosevelt was avowedly intended to circumvent, to hold that his patent is self-limited to such mechanism as automatically cuts in and out the call bell (including the ringing of the same) by the mere act of lifting and dropping the telephone. In the defendants' telephone, the call bell is in circuit before the receiver is lifted; in the complainant's, the act of lifting puts it in circuit. In the defendants' mechanism, when the connection is closed, the receiver must be hung upon a fork.—a prescribed manual act on the part of the operator; in complainant's, it is dropped on its cord, thus avoiding this otherwise definite manual act. In the Roosevelt mechanism, the lifting of the telephone automatically actuated the circuit so as to ring the bell; in the defendants' mechanism, such actuation is only obtained by the manual turning of a crank, or pressing of a button. In all these respects the defendants' mechanism is clearly differentiated from Roosevelt's purpose, viz. an arrangement whereby conscious manipulation of the switches and of the call bell was to have been dispensed with. I recognize that the conception of changing back and forth the switches, by virtue of the resting and lifting of the telephone upon the forks, is a close copy of Roosevelt's conception, and that perhaps his claims, standing apart from his description, are broad enough to cover the incidental deviations. But, after all, the main purpose of the invention must control the scope of the claims, and such purpose certainly did not include the defendants' mechanism.

For the foregoing reasons, there may be a finding that defendants do not infringe, and for the dismissal of the bill.