SCOTT et al. v. FISHER KNITTING MACH. CO. et al.

SAME v. REGAL TEXTILE CO. et al.

(Circuit Court, N. D. New York. July 14, 1905.)

Nos. 6,911, 6,912.

**1. PATENTS—INFRINGEMENT—KNITTING MACHINES.**

The Bellis patent, No. 561,559, for improvements in knitting machines, consisting essentially of jacks or loopers adapted to weave a supplemental thread into the fabric as it is being knitted to form a backing or a two-ply fabric, is not entitled to a broad construction, as covering a pioneer invention, the elements being essentially old in the art. As reasonably construed, it is not infringed by the machine of the Fisher patent, No. 656,535, which employs a device not the equivalent of such jacks, which operates in a different manner, and also produces a different fabric.

**2. SAME—CONSTRUCTION OF CLAIMS.**

Where claims following the specification in a patent end with the words "substantially as described," the specification must be looked to in construing such claims which may be thereby limited or qualified.

[Ed. Note.—For cases in point, see vol. 38, Cent. Dig. Patents, § 243.]

**3. SAME—INFRINGEMENT.**

A patent for a machine, which was inoperative, cannot be broadly construed to cover a subsequent machine which is successful.

[Ed. Note.—For cases in point, see vol. 38, Cent. Dig. Patents, § 379.]

In Equity.

Two suits in equity for alleged infringement of complainants' United States letters patent No. 561,559, granted June 9, 1896, to David C. Bellis, for improvements in knitting machines. The defendants in suit No. 6,911 are the manufacturers of the alleged infringing machine, while the defendants in suit No. 6,912 are mere users of same. Suits in equity, No. 6,963, Scott et al. v. Fisher Knit Goods Co., and No. 6,964, Scott et al. v. Seal Black Underwear et al., pursuant to stipulation, are submitted on the proof in case No. 6,911. Infringement of claims 1, 3, 6, and 7, only, is alleged. Defendants in suit No. 6,911 make the alleged infringing machine under and in accordance with United States letters patent No. 656,535, dated August 21, 1900, granted to M. J. Fisher, the president and manager of the defendant Fisher Knitting Machine Company, for "improvements in knitting machines." The defendants in suit No. 6,912 are users of this machine.

Howson & Howson, for complainants.

Kernan & Kernan (Charles Neave and Alfred Wilkinson, of counsel), for defendants.

RAY, District Judge (after stating the facts as above). The machines of both the complainants and the defendants are circular knitting machines, and have two sets of needles, the cylinder needles and the dial needles, which co-operate. Each machine produces a ribbed fabric if desired, and has means for introducing into the fabric as it is being knit a so-called "supplemental thread." This thread, interwoven, produces, in the one case, a backing capable of being fleeced, or of being used as a lining to the fabric, or as a two-ply fabric, and in the other a loose backing capable of being fleeced. This is also in a sense a two-ply fabric. The question at issue is, does each machine employ the same means for introducing into the fabric the supplemental thread, and, if so, do the two machines operate in the same way, and produce the same result; that is, the same fabric? The defendant strenuously insists that the means employed in the two machines for introducing and interlacing this supplemental thread are different, not equivalents, and that the fabrics produced are absolutely different. It is familiar law that, if complainants' patent shows patentable invention in the respects in controversy, and if their machine is protected by the patent, and defendants' machine uses substantially the same means, operating in substantially the same way, and produces substantially the same result as does complainants' when the fabric is made in accordance with their patent, infringement is made out, other factors of infringement being present. In this case much, and perhaps all, depends on the construction to be given to complainants' (the Bellis) patent. We will refer to the alleged infringing patent as the "Fisher Machine." If the Bellis patent is for an invention substantially different from that used by defendants, it is not infringed. It is contended that when construed, as complainants contend it should be, so as to cover defendants' machine, the Bellis patent is invalid. Also that when properly construed there is no infringement. The claims in controversy read:

"(1) A knitting-machine having two sets of needles and cams therefor for producing ribbed fabrics, jacks or loopers, cams, and a bed therefor operated by the driving mechanism of said machine to interlace a supplemental thread

with the meshes produced by the said needles, substantially as and for the purposes set forth."

"(3) A circular-knitting machine having two sets of needles, needle-cylinder, cam-cylinder, needle-dial, and cam-dial, together with jacks or loopers operatively mounted in grooves of a jack-bed fastened to the needle-dial, and cams adapted to operate the said jacks or loopers in conjunction with the said needles to interlace a supplemental thread with the meshes produced by the said needles, substantially as and for the purposes set forth."

"(6) A circular-knitting machine having two sets of needles and means for operating the same, a system of loopers or jacks operated by cams to interlace a supplemental thread with the meshes produced by the said needles, and means for supplying the said loopers with yarn, substantially as and for the purposes set forth.

"(7) In a circular-rib-knitting machine the combination of two sets of needles a cylinder and a dial therefor, a system of loopers or jacks, guided in slots of the said dial, a bed for said loopers or jacks, and means for operating the said needles and loopers, substantially as and for the purposes set forth."

The specifications say:

"My invention relates to those knitting-machines which produce ribbed fabrics and are commonly called 'rib-frames.' The object of my invention is to construct a machine which is capable of producing a two-ply rib-knit webbing, or of providing a backing on the ribbed knit fabric, which may be of a different material from that of which the body of the fabric is composed, while the latter is being produced by the machine. * * * The invention consists of a knitting-machine having two sets of needles disposed at an angle to each other, to produce a ribbed knit fabric, and one or more sets of jacks or loopers operated to act in conjunction with the needles to interlace a supplemental thread with the meshes composing the body of the ribbed fabric produced by the said two sets of needles. The invention further consists of the improvements hereinafter more fully described and pointed out in the claims. * * * To produce a plain ribbed fabric, the vertical needles, $v^1$, $v^2$, and horizontal needles, $h^1$, above mentioned, are necessary only; but to produce a backing on such fabric while the latter is being produced devices must be provided which bring the backing or supplemental thread from the inside of the machine over the needles at certain and predetermined intervals, so that it may be interlaced with the meshes of the fabric, as will be hereinafter more fully described, various devices may be employed to accomplish this; but preference is given to jacks, $j^1$, $j^2$, which are of such dimensions as to pass between the needles, and of such strength and stiffness as to sustain wear and tear."

It will be noted that the specifications of complainants' patent say: "But to produce a backing [which is made by the interlacing of the supplemental thread with the meshes composing the body of the ribbed fabric] on such fabric [plain ribbed fabric] while the latter is being produced, devices must be provided which bring the backing [thread, not completed backing] or supplemental thread from the inside of the machine over the needles at certain and predetermined intervals, so that it may be interlaced with the meshes of the fabric." In short, these devices for bringing this supplemental thread from the inside of the machine and over the needles must be present. If such devices are not present, the whole object of the invention, which is to produce a two-ply rib knit webbing, or, what is the same (in fact), a backing on the rib-knit fabric, fails; the declared object of the improvements cannot be accomplished. In claim 5, not in controversy, we read:

"A knitting machine for producing ribbed knit fabrics, having two sets of needles and cams therefor, and jacks or loopers, operated by cams, to bring an

extra thread from the inside of the machine over certain of the needles, sub-stantially as and for the purposes set forth."

These purposes have just been stated, viz., to produce the backing on the rib knit fabric. Claim 1 says "needles and cams therefor, for producing ribbed fabrics," and "jacks or loopers," etc., "to interlace a supplemental thread with the meshes produced by the said needles." This makes the backing. In claims 3 and 6 and 7 we have the same jacks or loopers performing the same office. The office is described in a different way, and in claim 7 the office of the jacks or loopers, viz., to bring the backing or supplemental thread from the inside of the machine over the needles, "so that it may be interlaced with the meshes or loops of the fabric," is pointed out by the use of the words "substantially as and for the purposes set forth." Turning to the specifications, we find, following the words already quoted, viz., "so that it [the supplemental thread] may be interlaced with the meshes of the fabric," these words: "various devices may be employed to accomplish this, but preference is given to jacks, $j^1$, $j^2$. * * * These jacks or loopers," etc. Jacks or loopers, or their mechanical equivalent, performing the office or function of bringing the backing or supplemental thread from the inside of the machine over certain of the needles, and putting and holding it for the necessary time in the proper position, so that it may and will interlace with the meshes of the fabric, and until that interlacing has been accomplished and the backing formed, are an element, and a necessary element, of each and every claim in controversy here. This is plain, and cannot be successfully controverted.

The complainant says:

"The defendants' machine [the alleged infringing machine] is illustrated in sleever form in exhibit defendants' machine, and is illustrated and described in complainants' exhibit Fisher patent."

That patent (No. 656,535, dated August 21, 1900, granted to Michael J. Fisher), in its specifications, says:

"My invention relates to a circular-knitting machine having a dial and cylinder with two sets of needles carried thereby of usual construction and mode of operation; and it consists in adding thereto a supplementary cylinder having grooves in its outer surface in which are carried sinkers depressed by a cam-cylinder of suitable construction to engage with an extra thread and secure it on one surface of the fabric, forming floating loops. This is the essence of my invention, which may be varied more or less in construction. I have shown it embodied in a simple and practical form of machine, which will be easily understood by reference to the accompanying drawings, in which the same letters and numerals of reference indicate the same parts in all the figures. * * *

"The new parts which I have invented are the supplementary or small cylinder, 20, connected to the dial by any suitable means. As here shown, the dial and small cylinder are equal in outer diameter, and a small groove, 21, is cut in the edge of the former corresponding in horizontal depth to the thickness of the small cylinder, so that when this cylinder is forced into position in this groove the parts are secured together and rotate as one. In the vertical grooves, 22, in the outer face of the small cylinder, are arranged the sinkers, 23, which are depressed and elevated by the engagement of their heels in cam-groove, 24, of smaller cam-cylinder, 25, formed of separate sections or side plates, and carried on annular plate or ring, 26, supported on frame or table by posts, 27, and arms, 28. Alternately with grooves, 22, are

cut grooves, 40, in the lower edge of the small cylinder for the passage of the dial-needles. 29 is the depressing-cam, 30 a plane segment above the groove, and 31 the elevating-cam. 32 is an elastic band or girdle of steel-spring construction surrounding the upper cylinder to maintain the sinkers and hold them in position. 33 is the feed for main thread, and 34 the feed for supplementary thread, with brush, 35, for guiding and holding thread against sinkers. These feeds are secured to ring, 26, and may be of any desirable form. As here illustrated, the machine is adapted to knit one-and-one rib fabric (though this may be changed easily to knit other desirable stitches), the sinkers being arranged to operate between the dial-needles and immediately back of the main-cylinder needles. The particular mode of operation I have here shown will be best understood by reference to Figs. IV and V. As the dial and cylinder needles begin to move respectively out and up, the sinkers are depressed from point a to point b, and engage with the supplementary thread fed to them by feed, 34, arranged slightly in advance of main feed, 33. When the sinkers are depressed to point b, they are in the position shown in Fig. V, pressing down the supplementary thread between the alternate dial-needles, so that it rests on the open latches of those needles. The reason of this engagement with the open latches is that as the dial-needles continue their outward movement the extra thread slips back over the ends of the latches onto the shanks of the needles, where it is left with just a trifle of slack, so that as the dial-needles move in again, having engaged with the main thread, they draw it easily under the extra thread, which is cast off over the needle-hooks at the same time as one loop of the main thread and is caught on the inside of the fabric by the loops of the main thread without strain or breaking the thread or danger of the extra thread showing through on the front. While this continuation of the outward movement and the return movement of the dial-needles is proceeding the sinkers are moving from b to c, holding down the extra thread at the same level; but after the extra thread is cast off over the needle-hooks the sinkers are further depressed a trifle by the short incline, d, which operates to tighten the extra-thread loops, taking up the slack and perfecting the smoothness of the fabric. After that it is evident that the sinkers are again elevated by incline, e, and the operation is repeated, the number of feeds being proportioned to the size of the machine."

Claim 1 is a sample of the 11 claims of this Fisher patent, and reads as follows:

"(1) The combination with a circular knitting machine, of the ordinary construction, having two sets of operating-needles of a supplementary cylinder of smaller diameter than the main cylinder mounted above the dial and arranged to move therewith, said supplementary cylinder having peripheral grooves, sinkers arranged in said grooves, and means for elevating and depressing said sinkers, so as to engage and press down a supplementary thread to form loops on one surface of the fabric."

The Bellis machine brings the extra or supplementary thread from the inside of the machine and firmly interlaces it with the meshes formed by the cylinder needles. Bellis uses devices which engage with this thread and push a loop thereof over the cylinder needles. This the alleged infringing machine of defendants does not do. It pushes no thread over the needles, nor does it interlace the supplemental thread in tightly with the meshes of the fabric. By the Fisher machine this extra or supplemental thread is laid in the trough or furrow of the fabric, so to speak, as it is being woven or formed, and at stated times pushed through the fabric in loops by a "sinker." This extra thread is not securely fastened or interwoven or interlaced. The fabric produced by it (the Fisher machine) is not, like the fabric produced by the complainants' machine, fit or suitable for use when it comes from the machine. It must be fleeced in order to make a fabric such that these loops will

stay in place or serve a useful purpose. ' In the work of the Bellis machine we have a finished two-ply fabric; a knit fabric with a very firm smooth backing, or, so to speak, lining, which may or may not be fleeced, depending on whether a fleeced or a double garment or fabric is desired. One of the most complete and satisfactory demonstrations of the fact that the two machines do not operate in substantially the same way with substantially the same means, or their equivalents, is that when operating on—that is, knitting— the same material in their ordinary ways or modes of operation the two machines do not produce substantially the same result or fabric. Bellis obtained separate letters patent for the fabric produced by his patented machine in its ordinary operation, but there is no pretense, nor can there be, that the fabric produced by defendants' machine infringes that patented article of manufacture. The Fisher patent cannot produce it. If it cannot infringe in what it produces, in its results, it certainly does not operate in substantially the same way with substantially the same means to produce substantially the same results. Its results are not an improvement on those produced by complainants' machine, nor are such results of the same general character or description, only inferior thereto. They are different. It would be going beyond all reason, in view of the prior art, which has been carefully examined and considered, to hold that the Bellis patent is a pioneer in the art in such sense that the patent covers all means and machinery for producing a double knit single or plain fabric, or a double knit ribbed fabric, or either, with a backing on such fabric formed by interlacing an extra or supplementary thread with the meshes of the fabric as it is being formed. In fact, such fabrics were not new at the time of the filing of Bellis' application. I am of the opinion and hold that the proper construction of the claims of the Bellis patent excludes, or does not include, the machine made under the Fisher patents or the Fisher devices.

Another evidence of the fact that the Fisher patent, defendants' (alleged to infringe), does not operate in substantially the same way by substantially the same means, is that October 22, 1896, Bellis applied for, and December 29, 1896, obtained, a patent for an improvement of the device described in and covered by letters patent No. 561,559, dated June 9, 1896 (the patent in suit). In the specifications of that patent he says of the patent in suit:

"My invention is an improvement on the knitting-machine for which United States patent No. 561,559 was granted to me on June 9, 1896, and which is adapted to produce ribbed knit fabric with a backing. The improvements consist of providing a ring between the needle-cylinder and the periphery of the needle-dial, first, to prevent the backing-loops after they have been formed from interfering with the jacks and dial-needles; secondly, to shield the last-formed backing-loops, so that when the next set of jacks push the woolen backing-thread over the cylinder-needles such jacks will not cut or disarrange the loop formed previously by the other set of jacks; thirdly, to provide a guide or support for the dial-needles and jacks; and, fourthly, to so form the upper part of the ring as that in looping the backing-thread a proper feed or slacking of the latter is had to produce uniform scallops and to form the dial-stitches on the peripheral edge. And the improvements further consist of the said ring in combination with devices, as hereinafter more fully described

and pointed out in the claims. * * * The upper peripheral edge, s, of the ring, S, also serves to direct the finished fabric, which is drawn by suitable take-ups, downward, so that the newly-formed backing-loops do not come into the way of the jacks to be next actuated, which, as has been found, was the case where no such ring, S, was provided on the machine, the jacks on such machines generally catching the loop previously formed and tearing on its upward motion the threads apart, destroying in this way the backing; but this is entirely obviated by the use of the said ring, S."

This is a substantial confession that the device of complainants' patent is inoperative for the purpose intended. We find no such defect in the operation of the Fisher patent. It is not claimed—at least not shown—that defendants' patent infringes complainants' later patent No. 574,129, of December 29, 1896. Hence it is fair to infer that as defendants', the Fisher patent, is not defective, as was complainants', and did not and does not have the device of complainants' later patent, which remedies such defect, there is a substantial and wide difference in the construction and operation of the two machines, the one alleged to have been infringed and the alleged infringing machine.

In the Fisher patent we find the inventor followed and imitated or built upon and drew from the prior art to some extent, but not from the Bellis patent, except as it followed, etc., the same prior art. This he had the right to do. The prior art was free to both.

Turning to the Cooper and Ford British patent of 1887, No. 172, we find a circular knitting machine with cylinder needles for making a plain fabric. In combination with these we have a set of hooks operated by cam plates to project between the frame needles as shown, and then receding to draw the loop thread between them, thus forming loops, which may be left as formed or afterwards cut as in ordinary pile fabrics. Cam plates are attached to vary the length of the loops. These hooks revolve around a center, and the cam plates, as it is desired to lengthen or shorten the loop, can be nearer to or further from this center. The first claim of this patent says:

"In a circular knitting frame, the combination with the frame needles, of hooks, such as E, for drawing the thread, $c^2$, into loops between the needles, substantially as described."

The Cooper and Webb (British) patent of 1887 says:

"Improvements in circular knitting machines and the fabrics produced thereon. * * * This invention relates to circular knitting machines of the self-acting needle class, and the object thereof is to enable thick thread to be laid in at the back of the fabric in loops, and also to provide for the introduction or laying in of weft or backing threads."

What for, if not to form a backing, or even a two-ply webbing? Complainants' patent (1896) says:

"The object of my invention is to construct a machine which is capable of producing a two-ply rib-knit webbing, or of providing a backing on the ribbed knit fabric," etc.

Defendants' patent (1900) says:

"My invention relates * * *, in which are carried sinkers * * * to engage with an extra thread and secure it on one surface of the fabric, forming floating loops."

Cooper and Webb have "hooks" which draw the extra thread into loops in the back of the fabric as it is woven. The loops, when so formed in the back of the fabric, may be cut and napped. Bellis has "jacks" or "loopers" to interlace the extra thread, while Fisher has sinkers to "engage with" the "extra thread and secure it to one surface of the fabric." Bellis came in about nine years after Cooper and Ford in the same art, using the same means, or their substantial equivalents, in a similar way, to accomplish the same general purpose. Cooper and Ford, not Bellis, are the pioneers. The complainants' expert admits, in effect, that the function of the "hooks" in Cooper and Ford is to draw out slack loops back of the cylinder needles (and these may or may not be cut), and that the cams which control such hooks may be adjusted so as positively to draw more or less of the supplemental thick threads, so as positively to regulate the length of the slack loop. The devices used in the Bellis patent may not have been, and, so far as appears, had not been, used in the prior art in precisely the same way as Bellis uses them to produce the fabric he describes and for which he obtained a patent. But his devices of two sets of needles operating at an angle to each other, and "jacks or loopers" or "pushers" or "pullers" or "hooks," and, we might say hookers, all substantially equivalents, and performing the same function, and operating on the supplemental thread, whether that was of the same material as the main fabric or not is immaterial, were all old. It seems clear that Bellis uses in his machine old devices. In fact, he says of some of those used (the main ones), "Those parts are constructed in the well-known manner." He sets out to produce a certain result in a particular way, and he says: "But to produce a backing on such fabric while the latter is being produced devices must be provided which bring the backing or supplemental thread from the inside of the machine over the needles at certain and predetermined intervals, so that it [the extra thread] may be interlaced with the meshes of the fabric," etc. He is not confined to the devices of jacks or loopers (hooks of the prior art may be used), but whatever is used to do what Bellis proposes to do, what his invention undertakes to do, and what his claims are for and say is to be done, and what he, by virtue of his monopolies, has the exclusive right to do, the machine, to be within that patent and monopoly, must produce the "backing on the rib-knit fabric or a two-ply rib-knit webbing by bringing the backing or supplemental thread from the inside of the machine over the needles at certain and predetermined intervals, and interlacing it with the meshes of the fabric." It is clear that this fabric can be produced in no other way than by devices acting in the manner stated in this patent. As defendants do not and have not used a device or machine that produces or that can produce this fabric, and as they do not use these mechanisms of complainants combined and operating in substantially the same way, or their equivalents, how can it be said that defendants infringe? Giving the broad construction to the claims of complainants' patent that they claim they are entitled to, it is clearly anticipated in the prior art, and void, and shows no patentable inven-

tion.   Giving to them the limited and reasonable construction to which they are probably entitled in view of the prior art, and there is invention, but no infringement.   This court can reach no other conclusion, after a careful examination of the exhibits, the evidence, and the arguments of counsel.   The court has not attempted to give more than a mere outline of the reasons that demand these conclusions.   To do otherwise would lengthen this decision beyond all reason, and demand extensive quotations from the evidence and from the authorities.

I will call attention to a few of the decided cases which seem applicable and decisive.   That (in such a case as this) infringement is an affirmative allegation, the cause of .action, and that it must be proved, cannot be disputed as a question of law.   It was so decided in Agawam Co. v. Jordan, 7 Wall. 583–609, 19 L. Ed. 177, and has not been questioned since.   The difference in the fabric produced by two machines is evidence of importance—many times—as showing the difference in the mode of operation of the two machines.   See Werner v. King, 96 U. S. 218, 230, 24 L. Ed. 613.   In that case the court also said:

"It is not only necessary to an infringement that the arrangement which infringes should perform the same service, or produce the same effect, but, as Mr. Justice Nelson said in Sickles v. Borden, 3 Blatchf. 535 [Fed. Cas. No. 12,832], it must be done in substantially the same way.   Burr v. Duryee, 1 Wall. 531 [17 L. Ed. 650, 660, 661]."

Claims 1, 3, 6, and 7 of the patent in suit end, "substantially as and for the purposes set forth."   This language in these claims has sent the court back to the specifications for an explanation, and in one instance a qualification of the claim, and a description and qualification or limitation of the elements of which the combination or structure of the patent is composed.   This is justified and required by the authorities.   Brown v. Guild, 23 Wall. 181, 218, 23 L. Ed. 161; Brown v. Davis, 116 U. S. 237, 251, 6 Sup. Ct. 379, 29 L. Ed. 659; Westinghouse v. Boyden Power Brake Co., 170 U. S. 537, 558, 18 Sup. Ct. 707, 717, 42 L. Ed. 1136.   In this last case it is said:

"The claim is for a triple valve device, etc., for admitting air from the main air pipe to the brake cylinder 'substantially as set forth.'   These words have been uniformly held by us to import into the claim the particulars of the specification, or, as was said in Seymour v. Osborne, 11 Wall. 516, 547, 20 L. Ed. 33, 'where the claim immediately follows the description of the invention, it may be construed in connection with the explanations contained in the specification, and where it contains words referring back to the specification it cannot properly be construed in any other way.'"

It was wisely said in Western Electric Co. v. Western Tel. Constr. Co. (C. C.) 79 Fed. 959, 961, "The main purpose of the invention must control the scope of the claims."   See, also, Snow v. L. S. & M. S. R. W. Co., 121 U. S. 617, 7 Sup. Ct. 1343, 30 L. Ed. 1004.   It is quite true that a patentee is entitled to the benefit of all the good and beneficial results his patented invention brings, even if some of them, even the most important, were not in his mind when he applied for and obtained his patent.   But this rule does not entitle the patentee to say that another patented machine, or

some machine not patented, is an infringement of his patent because it produces a fabric similar to his, one that may be used for the same purpose, one that may compete with his in the market, and also fill the same "long-felt want," unless the same elements of the one machine are used in the other, and operate therein in substantially the same way to produce the result. Two entirely different machines, different in elements, in combination of elements, and in operation, may produce the same result. Here the one does not infringe the other. If the results—the products—of the operation of two machines in the same art are different, this fact is not conclusive that there is no infringement. This result may be due to a different way or mode of operating the machines discovered by some person. But if the machines necessarily operate differently, and were intended to operate differently, and if one cannot do what the other does and was intended to do, there is no infringement, even when both belong to the same art. Such is this case.

There is another consideration entitled to some weight here. The complainants' patent did not go into practical use. We have seen why. Machines made in accordance with it and put in operation destroyed their products. It proved a boomerang. In view of this fact alone this court cannot give to the claims of the patent in suit—the Bellis—the broad construction claimed; one that would include the defendants' machine, which was and is a success. On this subject, see Deering v. Winona Harvester Works, 155 U. S. 286, 295, 15 Sup. Ct. 118, 39 L. Ed. 153, and Bradford v. Belknap Motor Co. (C. C.) 105 Fed. 63. This court has not gone extensively into the questions whether, in any view, the complainants' patent discloses invention. Assuming that, properly constructed, as it reads, taken as a whole, and in view of the prior art, invention is disclosed, there has been no invasion of complainants' rights.

Defendants have not infringed, and in each of the cases there will be a decree dismissing the bill of complaint, with costs.