## WILCOX v. DANNER.

## DANNER v. WILCOX.

### Patent Appeal Nos. 2816, 2817.

Court of Customs and Patent Appeals.
Dec. 17, 1931.

Charles B. Belknap, of Detroit, Mich., for Wilcox.

Charles W. Owen, of Toledo, Ohio (Owen & Owen, of Toledo, Ohio, of counsel), for Danner.

Before GRAHAM, Presiding Judge, and BLAND, HATFIELD, GARRETT, and LENROOT, Associate Judges.

LENROOT, Associate Judge.

These are cross-appeals in an interference proceeding, No. 53,854, declared by the United States Patent Office. Eighteen counts are involved, of which counts 6, 9, and 10 are illustrative and read as follows:

"6. The art of drawing glass which consists in supplying molten glass to an overflow chamber or spillway in the upper portion of a member having downwardly converging side portions, and causing the glass to freely flow from said receptacle down the converging side portions of said member without any contact with any auxiliary means."

"9. In a glass drawing apparatus, a directing member having downwardly converging side portions, said member having a glass-receiving recess at a point disposed intermediate the side portions and adjacent the upper edges thereof, the recessed part forming a spillway, means for directing molten glass into the recess whereby the glass is caused to flow over the wall of the recess and down the outer side portions of said member, the said member being spaced laterally from any means which might contact with any portion of the glass from the time it leaves the receiving recess until it leaves the lower end of said member whereby the uninterrupted and unobstructed flow of the complete mass of glass along the side portions of the member is insured, and means spaced below the directing member for guiding away the glass therefrom.

"10. In a glass drawing apparatus, the combination of a directing member down the outer surface of which molten glass is intended to flow in film form, the directing member having a glass overflow chamber or spillway at a point spaced upwardly from the lower end thereof, and means for delivering molten glass into the chamber whereby the glass is caused to flow in different directions from the said chamber and thence down over the outer surface of the directing member, which directing member constitutes a spacing medium for inner portions of the film formation."

The application of the party Wilcox, No. 449,285, was filed on March 3, 1921.

There are two applications of the party Danner involved in this interference: One, No. 563,107, filed on May 23, 1922, and the other, No. 722,899, filed on June 28, 1924.

The examiner of interferences awarded priority of invention upon all of the counts in issue to the party Danner. Upon appeal

to the Board of Appeals, that tribunal reversed the examiner as to counts 6, 7, 10, 11, and 12, and awarded priority as to them to the party Wilcox. Upon all the other counts it affirmed the decision of the examiner.

Both parties have appealed, Wilcox upon the counts awarded to Danner, and Danner upon the counts awarded to Wilcox.

The subject-matter of the interference is described in the decision of the Board of Appeals as follows: "The subject-matter related to a method and apparatus of drawing glass in which the molten glass is caused to pass down converging sides of a member and then be drawn off in the form of a sheet or tube. In the applications involved in interference the molten glass passes into a receptacle from which it overflows in its passage down the converging sides of the member previously referred to. In the applications of Wilcox and Allen the outer surface of the glass in its passage down the converging member is unobstructed while in the application of Danner scraper blades are placed in engagement with the outer surface of the flowing glass. The applications of Danner and Allen disclose the manufacturing of flat glass while that of *Allen* [Wilcox] discloses the making of a tube." (Italics ours.)

The reference to Allen in the above quotation is to a third party to the interference in the Patent Office, who is not a party to these appeals.

It appears that, as to counts 6, 7, 8, 9, and 12, each of them includes an element that the glass must flow from the overflow chamber or spillway down the converging side portions of the member specified without interruption, or in an uninterrupted manner. It further appears from a stipulation in the record that in certain proceedings had in the Patent Office the law examiner, and, upon appeal, the Board of Examiners in Chief, held that the party Danner did not have the right to make the claims corresponding to the said counts because Danner's application shows an intercepting member consisting of blades for gauging the thickness of the glass, thus preventing the glass from flowing down the converging side portions of the member without interruption.

Upon appeal to the commissioner, it was held by him that Danner did have the right to make said counts.

In the decision of the Board of Appeals from which these appeals are taken, the board held that, this question having been decided in favor of Danner by the highest tribunal of the Patent Office, the parties were not entitled to have the matter reopened. The party Wilcox assigns error in the holding that Danner had the right to make said counts.

We are of the opinion that the decision of the commissioner, quoted in said stipulation, was correct. It was there held that the intercepting blades above referred to were adjustable and could be moved out of engagement with the molten glass, that omission of such blades would be obvious to one skilled in the art, and therefore Danner had a right to make the counts in which such intercepting means was omitted.

This conclusion is fortified by the fact that two of Danner's original claims, viz., 47 and 48, in his May 23, 1922, application, make no reference to the use of such blades, thereby indicating that they might be omitted, and he was entitled to claims that did not include them.

We hold that Danner has the right to make all of the counts here in issue.

The Patent Office tribunals held that counts 13, 14, 17, and 18 are broad enough to read upon the Danner application, No. 722,899, here in interference, and also upon an application filed by Danner in April, 1919, that there was a continuity of said application No. 722,899, dating back to said 1919 application, and that therefore said last-named application acts as a constructive reduction to practice of the invention embraced in said counts 13, 14, 17, and 18.

The party Wilcox contends that if said counts be given the broad interpretation that was given them by the Patent Office tribunals, then there is no patentable difference between said counts and the claims of a patent issued to Danner on September 29, 1925, No. 1,555,358, which was offered in evidence by Wilcox, and that double patenting would result if the counts have been properly interpreted by the tribunals of the Patent Office. Wilcox therefore insists that the claims should not be so broadly interpreted as to make the claims obviously invalid upon the ground of double patenting, and, if not so interpreted, resort cannot be had to the 1919 application of Danner for reduction to practice.

We think the Patent Office tribunals have correctly interpreted said counts, and if their allowance to Danner would result in double patenting, that is a matter for ex parte consideration by the Patent Office tribunals, as

is suggested in the decision of the examiner of interferences.

This brings us to a consideration of the major issue here involved, which is one of fact, viz., as to which party actually first conceived and reduced to practice the invention embraced in counts 1 to 12, inclusive, and counts 15 and 16.

■ As to these counts the Board of Appeals held that Wilcox was the first to conceive and reduce to practice the invention embraced in counts 6, 7, 10, 11, and 12, reversing the examiner of interferences as to such counts, and upon all the others affirming his award of priority to Danner, holding that, as to all of such other counts, Danner was the first to conceive and reduce to practice the invention embraced therein.

With respect to counts 6, 7, 10, 11, and 12, both the examiner of interferences and the Board of Appeals found that Danner was entitled to the date of August 4, 1920, as his date of conception and reduction to practice of the invention embraced in said counts, that the party Wilcox had established November 15, 1919, as his date of conception, that between said date and January 1, 1920, Wilcox built a device embodying the invention, and on said January 1, 1920, it was tested, window glass cullet being used, that in such tests four glass tubes were produced, varying from eighteen to forty-four inches in length, and that the said tubes were manually withdrawn from the bottom of the device by the party Wilcox. Small samples of the tubing, cracked, are in evidence. It was further found that neither the glass produced by Wilcox, in the form of tubing, nor the glass produced by Danner, in the form of sheets, was annealed; but that this fact is immaterial to the issue here involved. We agree with the foregoing findings of said tribunals.

The examiner of interferences found that, because of innumerable streaks and bubbles in the glass tubing of Wilcox and obvious lack of uniformity of thickness, and there being no testimony that the glass produced could be put to use, reduction to practice had not been established by Wilcox prior to conception and reduction to practice by Danner, and that Wilcox was lacking in diligence in reducing the invention to practice, and therefore found that Danner was entitled to priority upon said counts.

The Board of Appeals disagreed with the decision of the examiner of interferences upon the question of reduction to practice, and in its decision said: "It is unnecessary to discuss the record but we have considered it carefully and we differ from the holding of the Examiner of Interferences in only one particular. This question relates to the operations of the party Wilcox upon which he relied for reduction to practice. The Examiner of Interferences is satisfied that Wilcox has offered sufficient proof to show that he did make glass tubing in accordance with certain counts of the issue. The examiner has held, however, that the tubing is of very inferior quality and inasmuch as he did not anneal and test the tubing his activities cannot be accepted as a complete reduction to practice. The examiner points out that in addition to the inferior quality of the tubing it is of uneven thickness. He also states that no utility for tubing of the character produced by Wilcox's operation has been shown. In reply to this last statement of the examiner, the party Wilcox has called our attention to the fact that tubing of this nature could be employed in walls for insulating purposes for electric wiring or it might be employed for making receptacles for holding tooth brushes or similar articles. We note that the examiner has called attention to the fact that Wilcox did not anneal the tubing, yet the examiner has accepted the operations of the party Danner as a reduction to practice even though Danner did not anneal the glass produced by him and it was clearly shown that he did not produce glass satisfactory for the purpose intended. We have carefully considered the brief of the party Danner pointing out his views in regard to the difficulty of supplying glass to the apparatus of Wilcox of a temperature which will properly flow around the annular trough and at the same time be controlled in the overflow. We are satisfied, however, that the proof satisfactorily shows that Wilcox did make glass tubing in the operation upon which he relies for reduction to practice and we consider the making of this tubing a reduction to practice of the subject-matter of certain of the counts. That the tubing produced is so inferior that it may have only a limited use we do not consider material. It is our view that both Wilcox and Danner proved reduction to practice by the operations upon which they relied but inasmuch as the activities of Wilcox were earlier than those of Danner, he should prevail."

We agree with the board that the test of the Wilcox device on January 1, 1920, constituted a reduction to practice of the invention embraced in said counts 6, 7, 10, 11, and 12. It will be observed from the

foregoing quotation that the board, after noting that the examiner of interferences stated that "no utility for tubing of the character produced by Wilcox's operation has been shown," said: " * * * In reply to this last statement of the examiner, the party Wilcox has called our attention to the fact that tubing of this nature could be employed in walls for insulating purposes for electric wiring or it might be employed for making receptacles for holding tooth brushes and similar articles. * * * "

This finding is vigorously challenged by Danner as having no support in the record and as being against direct testimony to the contrary by Danner. The party Danner testified that no tubing which would be usable could be formed from the tests made by Wilcox in January, 1920, giving as his reason that the Wilcox device was not capable of producing useable glass tubing. The testimony of Danner is to the effect that the Wilcox device was not operable. The device tested by Wilcox is substantially the same device as that shown in his application, and it does not appear that Danner ever moved to dissolve the interference on the ground of lack of operativeness of the Wilcox device. However this may be, we are clear that the Wilcox test of January 1, 1920, demonstrated the operativeness of the device if the product of the test had utility.

 It is a fact, as contended for by Danner, that there is no testimony in the record showing utility of the product of the Wilcox tests, but the board and this court may take judicial notice of any fact that is common knowledge. In the case of Brown et al. v. Piper, 91 U. S. 37, 23 L. Ed. 200, the court took judicial notice that an ice cream freezer was within the common knowledge and use of the people throughout the country. We think that it is a fact of common knowledge that glass tubing is used for purposes of insulation in electric wiring, and that in such use absolute uniformity of thickness is not necessary. Therefore the Board of Appeals could properly take judicial notice of that fact. The board had before it the samples of tubing produced in the Wilcox tests, and those samples are before us in this appeal. From an examination of such samples, we think the board was fully justified in holding that tubing of that character would be useful for insulating purposes. So far as the streaks and imperfections in the glass itself are concerned, the testimony on behalf of Wilcox was to the effect that window glass

cullet was used in the test, but that, if regular batch glass had been employed and the tubing had been annealed, it would have been of a better quality. We think it proper to assume that, so far as imperfections in the glass are concerned, if regular batch glass had been employed, the imperfections in the glass itself would at least not have been so great as appears from the samples. We do not think, however, that it follows that, if regular batch glass had been employed, tubing more uniform in thickness would have resulted; but we are also of the opinion, as heretofore indicated, that uniformity of thickness is not necessary in the use of glass tubing for insulating purposes. Whether the board might take judicial notice that tubing of the character produced in the Wilcox test would be useful for making receptacles for holding tooth brushes and similar articles, we need not inquire.

In the case of Hildreth v. Mastoras, 257 U. S. 27, 42 S. Ct. 20, 23, 66 L. Ed. 112, the Supreme Court, speaking of a device there under consideration, said: " * * * The machine patented may be imperfect in its operation; but if it embodies the generic principle and works, that is, if it actually and mechanically performs, though only in a crude way, the important function by which it makes the substantial change claimed for it in the art, it is enough. * * * "

For the reasons stated, we hold that there was no error in the decision of the Board of Appeals awarding priority of invention to the party Wilcox upon counts 6, 7, 10, 11, and 12.

██ With respect to claims 1 to 5, inclusive, 8, 9, 15, and 16, of which claim 9, hereinbefore quoted, is illustrative, there is involved in these claims, in addition to the elements of other claims heretofore considered, another element, namely, "means spaced below the directing member for guiding away the glass therefrom." Both the examiner of interferences and the Board of Appeals held that inasmuch as the party Wilcox, in his device which was tested on January 1, 1920, had not provided any means called for in the language just quoted, but had drawn the glass away from the device manually, he was not entitled to conception and reduction to practice of the invention embraced in said counts as of January 1, 1920, nor was he entitled to conception or reduction to practice as of any date prior to Danner's conception and reduction to practice of the invention embraced in these counts. Priority of inven-

tion as to these counts was awarded to Danner.

The party Wilcox contends that the means referred to in said counts is a mere incidental element of the same and not essential thereto, and further that the manual means employed by him for accomplishing this function complied with the requirements of the counts. It has been repeatedly held that any element included in a combination claim must be construed as an essential element and cannot be disregarded in the interpretation of a claim. Union Water-Meter Co. v. Desper, 101 U. S. 332, 337, 25 L. Ed. 1024; Gage v. Herring, 107 U. S. 640, 648, 2 S. Ct. 819, 27 L. Ed. 601; Fay et al. v. Cordesman et al., 109 U. S. 408, 420, 421, 3 S. Ct. 236, 244, 27 L. Ed. 979; Sargent v. Hall Safe & Lock Co., 114 U. S. 63, 86, 5 S. Ct. 1021, 29 L. Ed. 67; Wright v. Yuengling, 155 U. S. 47, 15 S. Ct. 1, 3, 39 L. Ed. 64.

In the case last cited, combination claims were involved, and, speaking of an element of the claims, the court said: " * * * The patentee, having described it in the specification, and declared it to be an essential feature of his invention, and having made it an element of these two claims, is not now at liberty to say that it is immaterial. * * * "

In Fay et al. v. Cordesman et al., supra, the court said: "The claims of the patents sued on in this case are claims for combinations. In such a claim, if the patentee specifies any element as entering into the combination, either directly by the language of the claim, or by such a reference to the descriptive part of the specification as carries such element into the claim, he makes such element material to the combination, and the court cannot declare it to be immaterial. It is his province to make his own claim and his privilege to restrict it. If it be a claim to a combination, and be restricted to specified elements, all must be regarded as material, leaving open only the question whether an omitted part is supplied by an equivalent device or instrumentality. * * * "

In Union Water-Meter Co. v. Desper, supra, the court said: " * * * Our law requires the patentee to specify particularly what he claims to be new, and if he claims a combination of certain elements or parts, we cannot declare that any one of these elements is immaterial. The patentee makes them all material by the restricted form of his claim. * * * "

It is true that all of the cases cited were infringement suits, and did not involve the question of reduction to practice which is here involved. Nevertheless, we think the general principle stated in said cases is applicable here, although there may be some exceptions to this general rule in cases where reduction to practice is involved. However, we do not think that the facts in the case at bar warrant any such exception being made here. The specifications and drawings of both parties describe the element here being considered, and both parties have claimed it, presumably as an essential element in combination. It also appears that this element does co-operate with the other elements named in the counts, in that movement of the glass down the directing member of the device is affected by the pull of the means guiding the glass away from the device. For this reason we do not consider the case of Stewart v. Thomas, 42 App. D. C. 222, relied upon by Wilcox, as applicable to the question here involved. In view of these facts we think that the element here being considered must be regarded, for the purposes of this interference, as an essential part of the counts. Whether or not these counts are patentably distinguishable from the counts heretofore considered by us is not a matter for us here to determine.

The remaining question is whether the manual drawing away of the glass from the device by the party Wilcox in the test of January 1, 1920, complied with the requirements of the counts.

We are clear that the manual drawing away of the glass from the device by Wilcox did not constitute a means for guiding away the glass called for in the counts in question and in the specifications of the parties. Brown v. Davis, 116 U. S. 237, 6 S. Ct. 379, 29 L. Ed. 659. It is established that the only method of guiding away the glass disclosed or practiced by Wilcox prior to the date of Danner's conception and reduction to practice was the manual method described in the testimony. We therefore hold that, as to the group of counts now being considered, Wilcox has not shown conception or reduction to practice prior to the date to which Danner is entitled for conception and reduction to practice, and therefore priority as to them was correctly awarded by the Board of Appeals to the party Danner.

We find no error in the decision of the Board of Appeals, and it is affirmed in all respects.

Affirmed.