### SHAKESPEARE CO. v. PERRINE MFG. CO. et al. *

### No. 10827.

Circuit Court of Appeals, Eighth Circuit.
July 1, 1937.

*Rehearing denied Aug. 16, 1937.

Otis A. Earl, of Kalamazoo, Mich. (Ralph E. Williamson, of Minneapolis, Minn., Chappell, Earl & Chappell, of Kalamazoo, Mich., and Williamson & Williamson, of Minneapolis, Minn., on the brief), for appellant.

Frank A. Whiteley, of Minneapolis, Minn., for appellees.

Before WOODROUGH, THOMAS, and FARIS, Circuit Judges.

FARIS, Circuit Judge.

This is an action for the alleged infringement of appellant's patent No. 1,903,559, issued to William Shakespeare, Jr., April 11, 1933, upon an application therefor, filed October 1, 1928, and duly assigned to appellant herein. Of the numerous claims therein, only claims 11 and 18 are involved and alleged to be infringed by appellees' accused device. These claims read thus:

"11. The combination with a spring winding fishing reel comprising a spool and a driving spring, of a brake means operatively associated with said spool, *means whereby said brake is automatically actuated to effective braking pressure-removing position on the unwinding rotation of said spool, and* manually operated means independent of the rotation of said spool for holding said brake in disengaged position.

"18. In a fishing reel, the combination of a support adapted to be attached to a fishing rod, a rotary spring drum for a fish line mounted on said support, a brake normally preventing rotation of said spring drum in the direction to wind the line thereon, *means for mounting said brake whereby the braking pressure thereof is reduced when the line is* drawn out, and hand-operable means for removing the braking effect of said brake to permit the line to be wound up by said spring drum." (Italics ours.)

As quoted claims indicate the patent is for improvements on spring-winding fishing reels, whereby on rotating the spool, which carries the fishing line, in the unwinding direction (for example by pulling or stripping the line off the spool with the left hand in fly fishing), the brake is automatically reduced in pressure or released, during the rotative movement. In spring-winding reels, the object of the brake is to prevent the reel from winding the line on the spool till such winding is desired by the fisherman, when by a finger lever, the brake is released and the line is wound on to the spool of the reel by the action of a spring. In using the old and ordinary spring-winding reel, having no automatic release actuated by the unwinding rotation of the spool, nice and difficult co-ordination was required between the left hand of the fisherman with which he stripped off line in lengthening his cast, and his right hand with which he manipulated the brake to allow stripping, and also to prevent the spring from winding in the line.

The defenses were the usual ones, namely, first, invalidity of appellant's patent in suit, and, second, that the accused device made and sold by appellees did not infringe claims 11 or 18 of such patent. The trial court found lack of infringement, and so finding did not at all consider, or rule

on the validity of appellant's patent. The trial court did not deliver any opinion in the case, but adopted, signed, and filed findings of fact and conclusions of law, alleged, in the brief of appellant and not denied, to have been prepared by counsel for appellees, which is not unusual.

Since the trial court, following what we deem the usual and better practice when lack of infringement develops, did not pass upon the validity of the patent in suit, [Irvin v. Buick Motor Co. (C.C.A.) 88 F. (2d) 947], we do not consider the question of validity, because it is not involved here. Among the findings of fact made by the court nisi, there was a finding that the patent in suit is not a basic, or pioneer patent, so a broad range of equivalents was not called for, and therefore the language of claims 11 and 18 must be held to cover and protect only the specific device described in the language of the above claims. No prior art patents were offered on the trial as anticipatory; but the Moore patent No. 602,585, and the Russell patent No. 1,-510,904 were offered to show the state of the art and as restricting the scope of claims 11 and 18, within the limits above stated. The prior art in the field of fishing reels is a fairly crowded one; even so-called spring-winding reels are fairly old in the art. Both the Moore Patent and the Russell Patent above-mentioned illustrate examples of spring-winding reels, whereby the line may be retrieved or wound on to the spool by an adaptation of the ordinary coiled, or clock spring, by the simple expedient of operating manually a brake which brake normally retards or prevents the spring from winding the line on to the spool. So, both such spring-winding reels and such brakes are old in the art.

Appellant's patent in suit purports to be for an improvement on the Russell Patent which is owned by appellant. This improvement, as forecast already, consists in a device whereby, upon rotating the spool in the unwinding direction (as in pulling the line off the spool before making a cast in fishing) the pressure of the brake is automatically reduced and released and the line may be pulled from the spool freely. This latter function or result is claimed by appellant in claim 11, thus, "means whereby said brake is automatically actuated to effective braking pressure-removing position on the unwinding rotation of said spool," and in claim 18 (in understandable English) thus: "means for mounting said brake whereby the braking pressure thereof is reduced when the line is drawn out." The two claims on this point seem identical, except that it can be said that the above-quoted language from claim 11 carries the notion not only of a reduction of braking pressure, but of entire cessation or removal thereof. It is true, however, that by the use of a sort of cam or cam-surface on the side of the spool which coacts with a similar cam on the brake element of the appellant's patent in suit, there is at last accomplished, almost an entire removal of braking pressure. In practice, it would seem to make no particular difference whether all, or a sufficient pressure of the brake is removed; provided, enough is removed to permit the line to be easily and efficiently pulled off the spool. So, all this being kept in mind we may, we think, consider only the quoted language from claim 18.

Appellant in its patent in suit did this by an improvement made on the Russell Patent; that is, it reduced and at last removed the pressure of the brake, so as to permit the line to be drawn off the spool by a rotation of the spool in an unwinding direction. This was all that it did beyond what had been done by Russell. But Moore had the conception of this many years before and accomplished it, rather crudely it may be, in his patent No. 602,-585 by placing his brake element in a manually operated hand brake. This brake of Moore consisted of a small pinion, or roller covered with leather or some such material, set in the finger lever and arranged with a ratchet gear, so that it would impinge on and revolve upon the side of the spool in one direction, but would be prevented from revolving in the other by the ratchet. The entire art carries the brake mounted in, or on the finger lever arm. So, it seems clear that appellant's patent in suit is a combination patent, to which by way of an improvement it has added the function of so mounting said brake as that, "the braking pressure thereof is reduced when the line is drawn out."

The identical result so far as value in use and practice is concerned was crudely accomplished by Moore, and also by appellees in a better way in their accused commercial device. But Moore accomplished it in a different way, and the defense here is that though appellees likewise accomplished the identical result, they did not do so by the use of the same mechanical elements, or

their equivalents, as were used by appellant in its patent in suit.

We think it fairly clear that, as the trial court found, the appellant's patent in suit is not a basic or pioneer patent. It is well-settled, of course, that in a pioneer patent the patentee is allowed a wide range of equivalents and the language of its claims is to be broadly construed; while in a crowded art and in a combination patent, the claims are to be limited to the specific language used in the claim. Keystone Driller Co. v. Northwest Engineering Co., 294 U.S. 42, 55 S.Ct. 262, 79 L.Ed. 747; Buhrke Co. v. Brauer Bros. Mfg. Co. (C.C.A.) 33 F.(2d) 838.

■ . Appellees concede that they accomplish, by their accused device, the identical practical result accomplished by appellant in its patent in suit. But as forecast, their contention is that such result is not in their accused device, brought about by the use of the same mechanical elements, or their equivalents as are found in appellant's patent. We are constrained to agree with them and with the lower court that this defense must be sustained. In order to constitute the infringement of a patent, which is not in its field a pioneer, it is not sufficient that the identical function exists, and the same result is accomplished by the accused device as is found, or accomplished in a patent in suit; but the plaintiff must go further, and show that such function and result are produced by the use of the same mechanical elements or their equivalents as are found in the patent sued on. Irvin v. Buick Motor Co. (C.C.A.) 88 F.(2d) 947. It is a settled maxim of patent law that that which if earlier will anticipate a patent, will if later, infringe it, and, of course, the converse is equally true. So those cases and there are many, which hold that a patent is not anticipated by a device which operates in a manner distinctly different from the teaching and claims of a patent in suit, are wholly apposite. See Carnegie Steel Co. v. Cambria Iron Co., 185 U.S. 403, 22 S.Ct. 698, 46 L.Ed. 968; Luten v. Bridge Co. (C.C.A.) 285 F. 840; Hubbell v. United States, 179 U.S. 77, 21 S.Ct. 24, 45 L.Ed. 95; Los Alamitos Sugar Co. v. Carroll (C.C. A.) 173 F. 280.

■■ In both appellant's patent in suit and appellees' accused device as also in Moore and Russell, the brake is positioned in or on the hand, or finger lever, so as to be manually operated if so desired. This brake usually faced with leather, or some similar material, contacts by spring pressure with the edge, side or periphery of the spool, in effect (in the accused device here, with a brake disc positioned below the spool), so that, by friction the spool is ordinarily prevented from rotation in either winding or unwinding direction.

Obviously, in all spring-winding reels there must be a mechanism, ordinarily a toothed pinion and pawls or a pawl, or a ratchet, connected with the winding stem on which the spool is positioned, so that except for the brake the line may be unwound which, of course, has a winding effect on the winding spring. This also we find in the prior art and in both the patent in suit and in appellees' accused device. With this the brake has nothing to do; but absent such mechanism the line could not be stripped from the spool at all, nor, indeed, could the spring be wound up. As said by a witness in the case, the mechanical principle which permits the line to be unwound is exemplified by the ordinary lawn mower, wherein when moved forward the pawls engage in the teeth of a ratchet, thus actuating the gears connected with the cutting element; while when moved backward, the pawls slip over the teeth of the ratchet and produce no movement of the gears which move the cutting element.

In appellant's patent in suit, the brake element is roughly speaking, shaped like a keystone. It is positioned above the finger lever, which being of spring material normally presses it against the lower side of the spool. This brake element is mounted at the lower end on the main stem or pivot, rather loosely, so that it may oscillate within limits (determined by detents cut in or set in the side of the spool) either in a clockwise or counter clockwise direction. At the lower end of this brake element there is attached an ordinary bent wire spring, which when the line rotates the spool in the unwinding direction, causes the brake element to move in a counter clockwise direction, until stopped by the left-hand detent. There is cut into, or placed in, this brake element a ramp-like cam which corresponds to, and on rotation of the spool in unwinding, contacts with a similar cam cut into the side of the spool, where the brake element contacts therewith. In rotating the spool in an unwinding direction the small bent wire spring moves the brake element toward the left-hand detent and in a counter clockwise direction, till a contact is

made between the ramp-like cams. On continuing the movement these cams by impingement, force, or cause the brake to lift from the side of the spool, thus reducing and finally removing almost entirely, the brake pressure, so that the only resistance to free rotation of the spool in the unwinding direction, is afforded by the winding spring, and so the line may be stripped from the spool freely in practice.

No such mechanism or action is found in appellees' accused device. In the latter, the brake pressure remains constant and the brake neither moves nor changes the pressure exerted, when the spool is rotated in the unwinding direction, as in pulling the line off the spool. This is brought about by the use of the braking disc above mentioned and by a ratchet and spider which permits the spool to rotate easily in the unwinding direction, due to the slippage which occurs between the brake disc and the spool through the ratchet construction already mentioned; being in nowise hampered by the brake, which, as already indicated, remains fixed and set at full pressure throughout the unwinding operation, and until released manually.

Much confusion in the case has been occasioned by the fact that the record abounds in references to the "commercial device" of the appellant which was offered in evidence as an exhibit, and discussed and referred to by the witnesses, and repeatedly by counsel in the briefs. We are unable to see any relevancy to the issues here of the commercial device of the appellant. True, there is a statement in the record by a witness for appellant that the commercial device of the appellant was not constructed under the patent in suit, but pursuant to the teachings of the Burdick patent, No. 1,882,771, which it seems is also owned by appellant. This also was unnecessary, irrelevant, and confusing. In a patent suit (except in those rare cases wherein the defense is that the patent in suit is a mere "paper patent," inoperable and impracticable), the question is whether the accused or commercial device of the defendant infringes, or reads on, the claims of the patent in suit. In such a suit, the commercial device of the plaintiff, in similitude to "the flowers that bloom in the spring, has nothing to do with the case," except to confuse a mechanical situation, already full of trouble and confusion to any court. Lately, in the case of Irvin v. Buick Motor Co., 88 F.(2d) 947, 952, this court

said, "ordinarily infringement is to be found and decreed only when on a comparison of the accused device, or article made, used, or sold, with the claims of the patent in suit, a substantial identity is found to exist in components, or their equivalents, and in function and result."

As said already, the identical object was sought to be, and was accomplished, by both appellant and appellees, but both, as also did Moore, approached the solution of the problem from different mechanical angles and so both successfully solved the problem in different ways; appellant by reducing the pressure of the brake, and appellees by wholly disregarding the brake, and by the use of a brake disc connected with a ratchet. So, we conclude as did the trial court, that the disputed element of brake-pressure reduction in the claims in suit is not found in appellees' structure, and so they have not infringed. It follows in our opinion that the judgment should be affirmed, and so we order.

*Rehearing denied Aug. 16, 1937.